to Dr. Robert Minders versus UnitedHealthcare. Mr. Block. Please accord. Good morning, your honors. I'm Philip Bach and I represent appellant Dr. Minders. Defendants did not assume ACN's obligations under the provider agreement with Dr. Minders and they cannot step into the shoes of ACN to enforce an arbitration clause that doesn't name them as a party. On remand from this court's opinion in 2015, where we were allowed to take discovery, we discovered a pre-existing agreement called the Master Services Agreement, MSA, between ACN and defendants that expressly states that defendants would provide certain services to ACN and disclaims any obligation to providers like Dr. Minders. In a deposition of defendant... Mr. Block, did you make that argument before the district court specifically that the Master Services Agreement precluded assumption? Yes, we did. I don't know if we said precluded assumption, but it precluded a finding of an assumption. It shows that there wasn't an assumption. Did you make that argument before the district court? I didn't see anything. I believe we did. Yeah, I believe we did. It's in our reply brief. We have a section devoted to that argument. The defendant argued that we hadn't sufficiently argued the MSA. We even had a topic heading about the MSA. But it is curious that the district court completely ignored the MSA. Well, I have a question about that, actually. Thank you. What does the MSA have to do with your client? You know, the reason I say that it seems to me that you're assumption between MSA and between ACN, but I don't know why there can't be both an MSA, which says, here's what we're going to do for ACN, and then an assumption, a separate assumption of ACN's responsibilities to your client. In other words, from what I can tell, the MSA has nothing to do with your client. Well, the MSA, Mr. Wicklund, the 30b6 witness testified that the only thing defendants did for ACN was because of the MSA. So there's an MSA, an agreement between the defendants and ACN that expressly disclaims any third-party beneficiaries and it talks about what they're going to do. And it mentions providers and provider contracts and says that they are subcontractors of ACN and it specifically disclaims any obligation of them. The providers have no right and then there's no evidence of some separate assumption like through conduct or something because the only conduct was pursuant to the MSA. And then the provider agreement itself expressly talks about payors and plans and Mr. Wicklund testified that handling claims and paying claims is what payors do. And the other thing that the district court ignored but which was briefed by the parties was this provider summaries. One second. I forgot the name exactly. Provider summary. There's a 2004 provider summary that he's testified was provided the Dr. Minders before he signed the provider agreement that talks about claims that are going to be handled for members of the claims will be sent directly to defendants not through the ACN middleman and that the claims will be paid by the defendants directly and yet the provider agreement doesn't say that defendants are part of the arbitration clause nor does it say government entities and all these other kinds of payors would have any obligations under the arbitration clause or any rights to seek arbitration. The provider agreement does allow ACN in its sole discretion to assign its rights duties or obligations under the agreement to any party. It does say that and there's no indication that they did and there's no indication that they told Dr. Minders that they were going to and the MSA shows that without the approval of provider. Yeah, so they didn't indicate the Dr. Minders that they were going to assign their why wouldn't be sufficient. Why would they have to express something? Why wouldn't their conduct be sufficient? It says that they have to give him notice. But the MSA from the agreement. It says it allows ACN group in its sole discretion to assign its rights duties or obligations under this agreement to any party at any time without approval of provider. It does say that and then the next sentence says that they will notify the provider in writing. If that happens or if that will happen and they didn't there wasn't an assignment there was just a hiring. For money money would be exchanged between defendants and ACM and defendants would handle their own claims in their own payment there. They are the ones who care about claims being rightful claims being honored and being paid. So they just took ACM out of the middle. ACM still had other obligations and ACM had the only contract with Dr. Minders Dr. Minders didn't have a direct contract with defendants. And their master services agreement specifically disclaims any such thing that the defendants could have assumed the contract the MSA could have said they were assuming the rights and obligations under the provider agreements, but it specifically talks about provider agreements and then says that it's not it says that nobody else is going to have any rights. It says that they working together with ACM. And they'll do commercially reasonable things when they deal with providers. It doesn't talk about providers having a direct right against the defendants. And if the defendants wanted to be part of this arbitration clause, they could have required that they be added to it their MSA which again is pre-existing says that they have the right to require changes to the provider agreements ACM is going to be sponsoring. So again. There's no evidence that there was an assumption except if you ignore the MSA. If you ignore the provider summary, then you say well, that's weird. Why are the defendants doing things here that they must have assumed to the contract or something, but that's not what happened. There's no there's no evidence that they assumed direct obligations to Dr. Minders and there's no your argument that any assumption would have to be in writing that conduct alone wouldn't be sufficient for an assumption. No, no, that's that's not the argument. But the argument is that when the writings all show that that's not what happened. It's error to find that it did but despite what the contracts say the conduct here means that there was an assumption of obligations to Dr. Minder so that he could demand arbitration. So providers could demand arbitration from defendants or whatever payors under this contract under the provider agreement when that's not what it says and there's you know, there's nothing in the provider agreement that lends itself to being interpreted as giving arbitration rights against payors. Dr. Mr. Wicklund testified that the role of handling claims and paying claims is what payors do. Payors payors the payors is sort of my curiosity. Is that always interested in following the money? When somebody does work they get paid and you can talk about assumption or some other payors whatever either quiet agreement or something but all along here. There's been a lot of service being rendered and people are getting paid. That's right in the provider agreement. I think it's paragraph 1.18 says that the payors are the ones responsible responsible for direct payment. So ACN doesn't pay the claims of somebody else. ACN is the middleman between in this case defendants paying Dr. Minders. They would be the middleman but that ACN isn't guaranteeing payment man if they're not involved in the payments payment went directly from United to your client. I didn't see any evidence that ACN was in the middle of that. Exactly. They're not they're not in the provider agreement says they won't be that the payor they define payor to include themselves sometimes so a payor can be the government a payor can be a health plan the payor can be an employer sponsored plan the payor could be them and they say the payor whoever it is is directly responsible responsible for direct payment to the provider and then ACN says they're not responsible for timely payment by the by that payor. They don't guarantee that that payor will pay. And here again this provider summary said specifically that United defendants would be the ones who received the claims and paid the claims and they're not mentioned in the provider agreement as a party who can compel arbitration. Mr. Black here into your rebuttal time. Do you want to save the rest of your time? I would your honor. Thank you. Thank you. Mr. Marotta whenever you're ready, please. Thank you your honor and may it please the court Sean Marotta for the Apple East United Healthcare Services and United Healthcare of Illinois. This case really comes down to one question that this court posed five and a half years ago in minders one, which is did United assume ACN's duties under ACN's provider agreement with minders and the answer is yes, and let me address some of the questions that the panel raised my friend on the other side first judge St. Eve minders did forfeit his argument about the third-party beneficiary clause. He submitted two briefs below on remand from this court there at docket number 88 and docket number 91 docket number 88 does not even mention the master service agreement in the argument section and as my friend said when he claimed preservation it was in the reply brief docket number 91 at page 7 and 8 that brief argues that the master service agreement is irrelevant because the provider agreement post dates the master service agreement and therefore he argues the provider agreement should control who the parties are page 10. Meanwhile refers to United's performance of the so-called payor services that my friend was just talking about but nowhere in that brief did minders argue that there's a third-party beneficiary clause that somehow negates or makes it impossible for United to have assumed ACN's duties. So for minders to argue in this court that the district court ignored that that provision is really sandbagging the district court and the whole reason that we have forfeiture doctrines the master service agreement is 30 pages of you know, narrow text and addenda and things so it makes sense that the district court doesn't have to root through that document find the provision that my friend now relies on an appeal and figure out its import to this case and he can't do so on the first time in this court. So I think the whole thing about the third-party beneficiary clause drops out. The second is the payor services argument that Mr. Bach has been making and I think the key misunderstanding is misunderstanding what United's corporate representative meant when he was discussing payor services. Payor services are not the services that a payor performs under the ACN provider agreement rather. They're the services that United provides for payors and this is at page 15 and 16 and page 18 of the Wicklund deposition and what he says is essentially broadly speaking United has two lines of business. In some forms United is a health insurance company. It ensures people's health it pays claims and it does things that an insurance company does and another line of business what United does is that if you were a major city or a large employer and you've decided to self insure your health insurance plan or to say Orissa, you might not have an in-house insurance company to administer that plan. So you might hire United to administer the plan for you to do things like adjudicate claims and so forth. That's what payor services are but under the ACN provider agreement, there is no classification of payor services. It's not a defined term in the agreement. The agreement doesn't say anything about what payors do. It's just taking this explanation of what United does in its business and trying to graft it onto the provider agreement, which does nothing to do with them. Mr. Morota, let me ask you a question here. Would you agree that the plaintiff would be able to force United into arbitration pursuant to the provider agreement over a payment dispute? Absolutely. And it's a mutual obligation. It suggests in the reply brief that we have not said there's mutuality. We accept that within the scope of the provider agreements arbitration clause. So anything arising out of or relating to the provider agreement, Mr. Minders could take United to arbitration. Absolutely could. And assuming, let's assume for a second that the argument regarding the master services agreement was not forfeited below, does the master services agreement have anything to do with the doctrine of assumption here? And if it does, what? I don't think so, Your Honor, for two reasons. First of all, the master services agreement, contractually speaking, might be the way that United promised to assume ACN's duties. People don't generally go around and assume duties just for the heck of it. Oftentimes you do so because you promised to someone else to assume their duties and the master service agreement in section 3.3 is how United did that. But even if the master service agreement wasn't in the picture, you have the separate assumption through conduct. So to the extent you think there's a ambiguity or anything about the master service agreement, just look at what the parties did. United's representative testified that from the first day Minders signed his provider agreement, they carried out ACN's duties under the agreement. Minders agreed. He testified that United provided pre-certifications, it provided case management, it provided eligibility information. And in fact, when we asked Minders, did you have any relationship with ACN at all? He said, no, it's all been United. And that shows that what happened was, is that United assumed those duties. And I actually do agree with my friend on the other side that previously ACN was acting as a middleman. The way the ACN provider agreement worked was ACN went out to chiropractors and said, be part of our network. We then will connect you to health insurance plans that need chiropractors for their members and we'll facilitate the relationship between the two of you. You know, they'll give us the money. We'll send the money to you. They'll, you know, we'll help with case management and ensuring that you are complying with case utilization and prior authorizations and everything else. But what United and then ACN did was they said, you know what, we're going to cut out the middleman. We're going to assume those duties from you ACN and perform them ourselves. And what the case law holds from time immemorial is that when there is the assumption of duties like that, United steps into the shoes of ACN and becomes bound as if it were arbitrary and it can compel arbitration in return. What impact should it have that Dr. Minders never received any written notice of this assumption? So two answers to that Judge St. Eve. First of all, I don't think there's a document that said, dear Dr. Minders, we hereby under the provider agreement assume this duty. But what Dr. Minders did receive and agreed that he received were the United operations manual, the bulletin and everything else that said don't send your stuff to ACN, send it to us, which I think is effectively written notification that the duties have been delegated and have been assumed. But second of all, that gets to the portion of our brief about the inability to accept performance from United and then turn around and reject that performance when it becomes inconvenient. So even if you thought that at some point in the far past, Minders could have said United. Who's this? I don't know who that is. My contract with ACN says that you're going to tell me in writing before somebody else takes on your duties. Maybe he could have done that back in 2014. I don't know. I don't think so, but maybe but having accepted performance for all those years, he can't then say United has nothing to do with me. I just accepted their hundreds of checks for all those years. And that's what our case law makes clear. And that's why he can't reject it on those grounds who paid. I'm sorry, who paid Dr. Minders. So Dr. Minders was paid by the plans, the health insurers, the United's the self-employed, you know, the self-insured entities that United provided payor services for but what ACN did was is it facilitated those payments or what it did before United stepped in and took on those duties for itself. So the way it worked under the original provider agreement is that the plan would send the money to ACN and ACN would facilitate the transmission of the money to Minders and even if it maybe didn't hit ACN's bank account, ACN would be that middleman facilitating the back and forth. But what United said is, you know what? Let's cut out the middleman. We'll do it ourselves. We'll assume those duties ourselves and that's what the contractual relationship was all about. Hundreds of payments. That's right, your honor. And you know, Minders never rejected one of them. Different entities are paying among those 100 payments? So the money is coming. The checks are United quote-unquote checks, but United as Mr. Wicklund explained, does a couple different things. Sometimes for its insured products, the money is literally coming out of United's bank account or that of one of its subsidiaries. For other employers like US Airways, which might have a large self-insured plan, you know, the money is going from the large employer to United and United's giving it to the provider. So the plan in that case might be the self-insured employer, but United is being responsible for giving the money to Minders. Okay. And so when my friend on the other side points out that ACN did not guarantee the ability of payors to pay, all it was saying was, is we're not insurer of the ability of health insurance plan to have money in the bank account when it's time to get it to you. But what it did take on the responsibility for was coordinating that payment. So if the coordination broke down, Minders could sue ACN or Minders could sue United. And I think that's also another point, which is that assumption is not, does not always mean novation, which is the relief from obligations of the original promisor. So, novation requires Minders to agree to let ACN out of the picture, but assumption doesn't. Assumption just means now that Minders can sue two people. He can, or can take to arbitration two people, either United or ACN. And both of those parties have the ability to invoke the arbitration clause against Minders. And this comes down to, I think, the mutuality that the Illinois Appellate Court pointed out in the Equistar case, which is what it comes down to is that if you step into the shoes of another party in a contract, in that case, subrogation, in this case, by assumption, and you take on their substantive duties, you also take on the remedial aspects of that relationship, which is to say that if the way you enforce those obligations on either side is through the arbitral process, then you have the right to compel arbitration and have the right to have compelled arbitration imposed against you. Minders has argued that there's some, there was no separate assumption of the arbitration obligation, but that argument doesn't work for two reasons. First, Equistar points out that whether you think of arbitration as a duty or an obligation or a right, it's all kind of semantic because really just the question is who has the right to compel arbitration. And second, in the trip manufacturing case from the Third Circuit by then Judge Alito, he points out an arbitration clause isn't a separate obligation that has to be assumed. It goes part and parcel with the substantive obligation that tells you how the substantive obligations you have assumed are enforced. In this case, it's through arbitration. And so at the end of the day, both the written documents and the conduct of the parties demonstrate that United validly assumed ACN's obligations to Minders under the provider agreement. Provider agreement then says that the provisions of this agreement, and this is section 15, shall extend to and be binding upon the parties hereto and their respective successors and assignees, if any. That includes the dispute resolution clause in section 21. And for all those reasons, we suggest that the district court was absolutely correct to dismiss this case for lack of venue and to allow arbitration to proceed in Minnesota, unless the court has further questions. Thank you, counsel. Mr. Back, rebuttal. Two points in rebuttal. The first being that this case is about junk facts, offering some new service that's available through defendants to collect money from participants in their plans, which was not an obligation of ACN and not an obligation of defendants. But you don't, Mr. Back, you don't argue, you know, that one thing I look for in We, the court, said that you should talk about the boundaries, the meets and bounds, they used the term. But I didn't see anywhere in your papers that the junk facts was not related to the portion of the provider agreement assumed by United. In other words, if we find that it was assumed, I don't see any argument that, you know, the arbitration clause would then prohibit this from going to arbitration because it wasn't related to the portion of the provider agreement that was assumed by United, which had to do with their broadly paying. Well, I'm the way I'm coming. I understand what you're saying, your honor. I think the way I'm looking at it is that they're arguing that they assumed obligations and therefore they have rights under the arbitration clause. The obligations that they assumed should be defining their rights under the contract and sending a junk facts about a way to collect money from insurance plan participants isn't an obligation they assumed and neither is sending illegal advertising about it a right that they had. But I look for that too in your brief because I thought, well, even if I assumed here, even if they proved, did they assume, could a non-signatory to an arbitration agreement enforce the agreement and in meanders one, the court said both parties acknowledge that the contractual theory of assumption is one through which a non-signatory to an arbitration agreement can enforce the agreement and there's no argument that we got it wrong in meanders one. It's true that we didn't argue this court got anything wrong, but in remanding it for discovery, we're arguing that what the discovery showed is that there wasn't an assumption, but even ignoring the MSA, if you just look at the provider agreement, it's not only about ACN. It's also about payors and it's about plans and defendants role was known at the time and didn't change. They didn't assume the contract and become ACN. They kept being a payor and a plan. There's plenty of there's repeated discussion about payors. I think 17 we said as distinguished from ACN and about plans. There's eligibility verification. For example, 3.13 each plan maintains the right for final verification of eligibility and this verification supersedes any authorization of care verification of eligibility and or claims payment review made by ACN group or payor. So ACN group is already taken out of the equation. The defendants didn't come in and and replace them. They were already just standing there even in their even in what they do. They say they may perform ACN. This is 2.1 ACN group may perform case management quality management claims processing Etc doesn't say they're the only party that can and there's not really any reason to think anybody would have cared that the defendants would process their own claims. In fact, the provider summary said they were going to do that if they wanted to replace ACN. They could have replaced ACN in the provider agreement entirely, but they didn't they help. They kept the providers at arm's length. Their agreement is only with ACN and ACN and their agreement with ACN says ACN has its agreements with its providers over there. For those reasons and the reasons in our briefs, we would ask that you reverse the district court. Thank you Mr. Bob. Thank you Mr. Murata. The case will be taken under advice.